

FILED'10 JUN 25 15:46USDC-ORP

1  Clayton L. Howard
2  SID #5838277
3  777 Stanton Blvd.
4  Ontario, OR. 97914
5  Plaintiff Pro-se
6
7
8          United States District Court
9             District of Oregon
10
11                                   CV 10- 737 -AC
12  Clayton Lamont Howard,        CASE NO.
13        Plaintiff,
14                                  (Verified)
15
16       ✓ s.                      CIVIL Rights
17                                  Complaint
18
19  John Vargo, M.D.,             42 USC § 1983
20  Oregon State Penitentiary;
21  Steve Shelton, MD, Oregon     Jury Trial
22  Department of Corrections;    Demanded
23  Dr. Hansen, M.D., Oregon
24  State Penitentiary; Dr. Gulick,

Page 1 of 47

1. M.D., SNAKE RIVER CORRECTIONAL
2. INSTITUTION; S. Hodge, RN,
3. SNAKE RIVER CORRECTIONAL INSTITUTION;
4. Ms. BONNER, NURSE, SNAKE RIVER
5. CORRECTIONAL INSTITUTION; R. Robinson,
6. X RAY TECH, SNAKE RIVER CORRECTIONAL
7. INSTITUTION; 90 PAYNE, SNAKE RIVER
8. CORRECTIONAL INSTITUTION; BRAD
9. CATN, SNAKE RIVER CORRECTIONAL
10. INSTITUTION; Lt. EASTWOOD,
11. SNAKE RIVER CORRECTIONAL
12. INSTITUTION; cpt. CAMPBELL,
13. SNAKE RIVER CORRECTIONAL
14. INSTITUTION; JAMIE MILLER,
15. SNAKE RIVER CORRECTIONAL
16. INSTITUTION; MARK NOOTH,
17. SNAKE RIVER CORRECTIONAL
18. INSTITUTION; OREGON
19. DEPARTMENT of CORRECTIONS,
20. SNAKE RIVER CORRECTIONAL
21. INSTITUTION, AND OREGON
22. STATE PENITENTIARY;
23.
24. All IN theIR INDIVIDUAL

Page 2 of 47

1 AND OFFICIAL CAPACITY,
2 ACTING UNDER COLOR OF STATE
3 LAW, FOR THEIR ACTIONS AND/OR
4 IN-ACTIONS;
5       DEFENDANTS
6
7
8 I.    INTRODUCTION
9
10 1) THIS IS A VERIFIED CIVIL RIGHTS
11 COMPLAINT FOR COMPENSATORY, NOMINAL,
12 AND PUNITIVE DAMAGES, FOR DEFENDANTS
13 VIOLATIONS OF PLAINTIFFS RIGHTS UNDER
14 THE FIRST, EIGHTH, AND FOURTEENTH AMEND-
15 MENTS OF THE UNITED STATES CONSTITUTION,
16 AND ARTICLE I, SECTION 16 OF THE OREGON
17 CONSTITUTION, AS WELL AS OREGON REVISED
18 STATUTE LAWS, AND OREGON DEPARTMENT
19 OF CORRECTIONS ADMINISTRATIVE RULES, POLICIES,
20 AND PROCEDURES. THE VIOLATIONS GIVING
21 RISE TO THIS COMPLAINT INVOLVE RETALIATION,
22 DELIBERATE INDIFFERENCE TO PLAINTIFFS
23 SERIOUS MEDICAL NEEDS, RECKLESS DISREGARD
24 FOR PLAINTIFFS RIGHTS AND SERIOUS MEDICAL NEEDS,

1  AND DUE PROCESS OF LAW.

2

3  II.    Jurisdiction

4

5  2)  This court has Jurisdiction

6  PURSUANT to 42 USC § 1983, 28 USC

7  §§ 1331 AND 1343 AS A FEDERAL QUESTION

8  ARISES UNDER the United States Constitution.

9  Additionally NOMINAL, CompENSAtory, AND

10  PUNITIVE damages ARE REQUESTED for the

11  Violations of plAINTiffs' Rights.

12

13  3)  VENUE is APPROPRIATE IN this Court

14  UNDER 28 USC § 1391 SINCE substANtiAl

15  EVENts giving RISE to this ComplAINt

16  OCCURED IN this DistRICt.

17

18  4)  PURSUANT to the REQUIREMENts of

19  the PRISONERS LitigAtioN Reform Act,

20  42 USC § 1997, All AvAilAble Remedies

21  hAve been ExhAusted through OREgoN

22  DEPARTMENT of CORREctions, OREgoN Tort

23  ClAims - DEpARtment of AdmINIstRAtive

24  SERVICES, AND GRIEVANCE Review System,

Page 4 of 47

1   prior to this complaint being filed.

2

3   III.        PARTIES

4

5   5) plaintiff, Clayton Lamont Howard,

6   is a inmate in the custody of the

7   Oregon Department of Corrections,

8   under a sentence imposed by the

9   State of Oregon. Plaintiff is currently

10  incarcerated at the Snake River Corr-

11  -ectional Institution in Ontario Oregon.

12  In this complaint the questions that

13  give rise to the complaint occured while

14  plaintiff was incarcerated at the Oregon

15  State Penitentiary and Snake River Corre-

16  -tional Institution, in special housing.

17

18  6) Defendant Vango is a Doctor at

19  the Oregon State Penitentiary and is

20  the chief medical officer;

21  Defendant Shelton is a Doctor and

22  is the Oregon Department of Corrections

23  Health Services medical Director;

24  Defendant Hansen is a Doctor

Page 5 of 47

1. At the Oregon State Penitentiary;
2. Defendant Gulick is a Doctor at the
3. Snake River Correctional Institution;
4. Defendant Hodge is a Registered Nurse,
5. and the Medical Services Manager at Snake
6. River Correctional Institution;
7. Defendant Bonner is a Nurse at the
8. Snake River Correctional Institution;
9. Defendant Eastwood is a Lieutenant
10. at Snake River Correctional Institution;
11. Defendant Payne is a officer at the
12. Snake River Correctional Institution;
13. Defendant Miller is the Assistant Supt.
14. of Security at Snake River Correctional Institution;
15. Defendant Cain is the Security Manager
16. at Snake River Correctional Institution;
17. Defendant Campbell is a Captain at
18. Snake River Correctional Institution;
19. Defendant Nooth is the Superintendent
20. at Snake River Correctional Institution;
21. Defendant Robinson, X Ray Tech, Snake River;
22. 7) All of the defendants are being
23. Sued in their Individual and Official
24. Capacity, for their Actions and/or Inactions,

Page 6 of 47

1  Acting Under Color of State Law, for
2  their failure to provide Adequate and
3  Necessary Medical Treatment, for their
4  Reckless Disregard to plaintiffs serious
5  medical needs, for their Deliberate
6  Indifference to plaintiffs serious
7  medical needs, for Intentional and
8  Deliberate infliction of pain, Knowingly,
9  for their Retaliation, Knowingly, Violating
10  plaintiffs statutory and Constitutional
11  Rights, protected by state Laws and the
12  State and Federal Constitutions.
13
14  IV.  Summary of Allegations
15
16  8) plaintiff brings this Action
17  due to SRCI prison officials'
18  Reckless disregard and deliberate
19  Indifference to plaintiffs serious
20  medical needs, and OSP officials
21  Intentional causing plaintiff
22  pain, by deprivation of medication.
23  Theres two (2) claims; (Claim I against
24  SRCI officials; Claim II OSP officials).

1  V.    Claim I

2

3  (SNAKE River Correctional Institution)

4  Deliberate Indifference; Reckless Disregard;

5  Intentional Infliction of pain; Misapplication

6  of ODOC Administrative Rule; Retaliation;

7  Gross Negligence; Serious medical needs,

8  Condition, deprivation of Medication,

9  Mental, Emotional, pain and suffering.

10

11  On Defendants: (Bonner, payne, Gulick,

12  Hodge, Eastwood, Campbell, Cain, Miller,

13  Nooth, Shelton, Robinson )

14

15       Facts:

16

17  9] In 2002 plaintiff was housed in

18  the Disciplinary Segregation Unit (DSU)

19  At the SNAKE River Correctional Institution

20  (SRCI). plaintiff was subjected to "Strip

21  Status" As defined in Lemaire v. Maass,

22  CV 89-382-PA, 745 F. Supp. 623. As A

23  Result plaintiff filed A Civil Rights Law-

24  Suit Against SRCI officials, including Medical.

10 | IN DECEMBER 2007 the CASE
WAS settled AND plaintiff WAS gIVEN
Approx. $9,300°° to settle the CASE, with
A SimulAR CASE,[1] HowARd V. klickA, Et.Al.
(SRCI) CV 03 792 AA. IN this CASE
PlaintIff Alleged denial of MedicAtion for
plaintiffs pain AND documented NECK AND
bAck INjuRies. This CASE WAS WELL knowN
to SRCI officials, SecuRity AND MedicAl,
due to the ChAnges Resulting from the
LAwsuit. PlaintIff ImmediAtely WAS
Subjected to RetAliAtion upoN RetuRN
to SRCI.

11) ON 12-12-07 plaintIff WAS transferred
to SRCI and placed IN the Administrative
SegregAtion UNit (ASU). FoR the first
Week SRCI NuRSE, defendAnt BoNNER,
Refused to pnovide plaintIff Any of his
MedicAtion, stAting "oh we know who

( / ( / ( ( ( ( ( /
[1] The Relevancy of these CASES ARE to
EstAblish RetAliAtion clAims oNly

1   You ARE MR. Howard, you have nothing
2   Coming here". Plaintiff was prescribed
3   several medications (Colace, Zantac, Naprofen,
4   Benadryl, Nasal spray, Suppositories) All of
5   which defendant Bonner repeatedly
6   denied plaintiff, though plaintiff seen
7   her mark the medication (MAR) Card As
8   if she had in fact issued the medication.
9   Plaintiff Repeatedly Requested his medication
10  As he was in pain, (in neck, back) As
11  well as bleeding when defecating, having
12  problems breathing, and pain in plaintiffs
13  Stomach. NURSE Bonner was upset At
14  plaintiff Also, for refusing a T B test,
15  which plaintiff took At the previous
16  Institution, but Bonner Insisted plaintiff
17  did Not (though she later found out
18  I did take it; from Another SRCI NURSE).
19  plaintiffs  Grievances (# 2007-12-032/033)
20  outlines the harrassment, retaliation
21  And Deliberate Indifference to the
22  medication denials. As A Result of
23  being denied my medication plaintiff
24  Suffered pain, (deliberately by Bonner)

Page 10 of 47

1  from 12-12-07 thru 12-20-07,
2  Defendant Bonner didn't stop there

3  
4  12) Plaintiff complained About Nurse
5  Bonners Actions to Defendant Hodge,
6  And in Retaliation Nurse Bonner spoke
7  to Hodge, And Hodge supported Nurse
8  Bonners Retaliatory Actions, and though
9  her Supervisor, Refused to intervene,
10 Allowing plaintiffs medical conditions
11 to continue, And worsen. Plaintiff had
12 A "Allergic reaction" from the deprivation
13 of Benadryl, causing plaintiff to be
14 taken to the SRCI Infirmary, where
15 Nurse Fritz gave plaintiff medication
16 And scheduled plaintiff to see SRCI
17 Dr. Gulick, M.D., Bonner, learning
18 this spoke to (Defendant) Gulick
19 before plaintiff, And as a Result
20 defendant Gulick Discontinued And
21 Refused to Reorder plaintiffs medications
22 (Benadryl and Nasalide), stating that
23 Counseling And Treatment Services (CTS),
24 Not medical, must Approve the Benadryl.

Page 11 of 47

1  Plaintiff was told by CTS that this
2  was false, which plaintiff already knew,
3  As the medication had been Routinely
4  Renewed by All DOC Doctors prior to
5  Arrival at SRCI. Defendant Gulick
6  discontinued the Nasalide and put
7  Plaintiff on Claritin, though None of
8  the symptoms for Claritin Existed
9  with Plaintiff. Plaintiff told Gulick
10  he was aware of Nurse Bonner Asking
11  him to Discontinue the Medication, to
12  get her out of the medication deprivation
13  Claim. Defendant Gulick Refused to
14  Reorder the medication And as a Result
15  plaintiff suffered continuously; could
16  not sleep due to breathing problems,
17  Continous skin irratation, Extensively.
18  Though the medical Condition may
19  Not be "serious", it was the "intent,"
20  And deprivation "due to Retaliation" that
21  brings forth this claim, Against Bonner
22  And Gulick, However the Retaliation
23  And Deprivation didnt stop there and
24  in fact Escalated into a "Serious" level.

Page 12 of 47

13) PRIOR to ARRIVAL At SRCI
plaintiff had A medical ORder for
" Double handcuffs". This ORder, dated
6-26-07 WAS for (1) YEAR. The purpose
is clearly documented in plaintiffs
medical file, going back to 1987.
THE ORDER WAS issued by OSP DR.
VARgo, who had testified AS A
defendant IN A trial REGARDing
plaintiffs "SERIOUS" medical NEEDS,
to wit NECK, BAck, shoulder, ARM,
hands pain. IN REtaliation for
the grievance AgAINSt BONNER And
Gulick, Coupled with defendant
PAYNE'S Actions (2) Defendant Gulick,
without EVEN EXAMINING plaintiff
OR speaking to plaintiff, Discontinued
the ORDER, CAUSING AN "Immediate
Security CONCERN with security staff."
plaintiff lEARNED of the Discontinued
ORDER FROM A NURSE who came to my

( ( ( ( ( ( ( / /

(2) PAYNE AND BONNER may be RELATIVES;Nepotism

1  CELL AND told ME I had "(1) month,
2  AND to EXERCISE, giving plAINTIFF A
3  booklet". plAINTIFF leARNED the NEXT
4  dAy, from A "ConfidentiAl NURSE And
5  stAff" that dEfENdANT pAYNE ComplAINED
6  to NURSE BONNER, ANd dEfENdANT CAmpbEll,
7  who ContAcTEd mEdicAl for VERifcATION
8  of the mEdicAl ORdER. upoN lEARNING
9  It WAS VAlId pAYNE, BONNER, CAmpbEll,
10  ANd GulIck ConspiREd togEthER, And
11  the ORdER WAS discontinUEd, but Also
12  ChANgEd to (1) moNth. CAmpbEll did not
13  likE doablE cuffEd INmATEs, which pAYNE
14  KNEW, so pAyNE usEd his INflUENCE with
15  BONNER to gET GulIck to DisconTinUE
16  the RESTRAINT ORdER. ONCE discontinUEd
17  pAYNE usEd EvERy opportunity to
18  "INflict pAIN" upoN plAINTIFF, INtENtioNAlly.
19
20  14) pRioR to the "INtENtioNAl INflictioN
21  of pAIN" INcidENts, plAINTIFF
22  AttEmptEd to gET dEfENdANTS CAIN
23  And MillER, ANd NooTh to INtERvENE,
24  As wEll As HodgE, All to NO AVAIl.

Page 14 of 47

1    Plaintiff wrote inmate Communication
2    (kites) to Hodge, Cain, Campbell, Miller, Nooth
3    to get Medical or security to Authorize
4    the double cuff Restraints. All Requests
5    were Refused. Medical said security
6    could Allow it; Security said medical
7    must Allow it. Hodge said see Bonner.
8    plaintiff filed Grievances to Gulick
9    (#2007-12-035) And Cain (2008-02-004),
10   but both were denied, As well As the
11   Appeals to Miller, Nooth, and Shelton.
12   Then Payne had the "go Ahead" to
13   subject Plaintiff to "Excruciating pain".
14
15   15) On 2-2-08 c/o Sarazin and
16   Payne came to Plaintiff's cell,
17   ASU-07, And informed me that
18   the Nurse wanted to see me, when
19   I Asked Payne why he said "if you
20   don't come out, were coming in". I
21   Asked Sarazin why was I needed
22   And I learned my Non-Wool Blanket
23   Order was Also discontinued by Gulick,
24   At Bonners Request. (More Retaliation).

1. I told both PAYNE AND SARAZIN I
2. NEED "double-cuffs" to go. PAYNE Attempted
3. to "Single-cuff" me, but due to the PAIN
4. I WAS EXPERIENCING, double cuffs were
5. IN fact used. However on the WAY "to"
6. SEE the NURSE PAYNE SAID" you won't
7. be IN doubles" on the WAY back ", AND he
8. MENt it." After speaking with the NURSE
9. AND LEARNING of the Discontinued NON-
10. WOOl blankets, I was asked to take
11. Another "wool patch test", though my
12. file is Clearly documented (for YEARS),
13. I had NON-WOOl blankets. WHEN I
14. told the NURSE my CLARITIN MAY CAUSE
15. A FALSE-Negative Result she Allowed
16. ME to keep my Blankets AND return
17. to my Cell. However PAYNE USED
18. "Excessive physical force" AND put
19. Single cuffs on plaintiff. This
20. WAS Authorized by defendant EAST-
21. Wood, who CAME to witness the pain
22. I experienced. He believed plaintiff
23. WAS "Acting". Several staff AND the
24. NURSE watched PAYNE literally "drag"

1. plaintiff down the corridor, by
2. ONE ARM, CAUSING EXCRUCIATING PAIN
3. IN plaintiffs ARM, shoulder, NECK, AND
4. back. PAYNE laughed All the way.
5. PAYNE Knowingly, DeLiberately, Maliciously,
6. AND Recklessly disregarded MY Rights,
7. And INflicted PAIN UPON ME. DEFENDANT
8. EASTwood Allowed the PAIN to CONTINUE,
9. by watching the inflection of PAIN,
10. And failing to stop it, though he
11. had the Authority to do so, GRIEVANCE
12. #2008-02-004 AND 2008-02-012
13. outlines these events. My Appeals to
14. Hodge, CAIN, CAmpbell, Miller, Noofh
15. All WERE denied. FURTHER Appeals
16. to Shelton WERE denied.
17.
18. 16) ON 3-3-08 PAYNE AGAIN "WAS
19. CAlled" to be the one to Apply "single"
20. Cuffs ON ME, so my cell could be
21. SEARched. PAYNE AGAIN, IN the
22. PRESENCE of EASTwood, "inflicted
23. PAIN UPON ME", forcefully applying
24. single cuffs on plaintiff, this time

Page 17 of 47

1  "PERSONALLY being called to the Unit
2  to do so", because other staff could
3  Not get them on me. Dwyne, "personally"
4  being the "Howard single cuff man",
5  caused him to "demonstrate" to staff
6  "how he does it", (pain intended to Also
7  occur. on 3-3-08 his infliction
8  REINJURED my existing Excruciating
9  painful neck, shoulder, Arm, back,
10  And hands. pain shot through my
11  body, down my left leg. After being
12  put back in my cell I AGAIN wrote
13  defendants Campbell, Carn, Eastwood,
14  Miller, and Nooth, telling them
15  that OAR 291-046-0080(3) Allowed
16  "Security" to Authorize the double
17  Cuffs. They Refused. I had also
18  wrote the ODOC Chief of Security,
19  Jeff premo, on the matter (as well
20  As other concerns Against SRCI officials).
21
22  17) on 3-12-08 Premo drove from
23  Salem to ONTARIO, and seen me.
24  when I was pulled out of my cell

Page 18 of 47

1  I was cuffed, "single", PER Campbell,
2  (to All staff). Pesmo Immediately had
3  the Restraints Removed "completely' and
4  spoke to Cain And Miller later, who
5  "finally", PER Security, Authorized
6  the double-cuff Authorization. They
7  could have prevented my pain from
8  occurring and failed to do so. Payne
9  Used the opportunity to "put a hurting
10  on me". Eastwood Assumed that I
11  WAS "Simulating pain". Campbell
12  ORdERed All staff Not to double
13  cuff me whatsoever, though he
14  knew of the previous Order. Hodge,
15  Cain, Miller Refused to INTERVENE.
16  Nooth Refused to Order double
17  cuffs, And he had the Authority
18  to do so. Finally Gulick seen
19  me, (after Reinjury by payne) And
20  Ordered A Xray of my Neck.
21  Upon Review of the test Results
22  he Ordered A MRI, And there-
23  After he And Shelton Approved
24  Plaintiff for Surgery. Double cuffs,

Page 19 of 47

1. "PER MEDICAL" WAS ORDERED, (IN CONJUNCTION
2. WITH SECURITY). PLAINTIFF HAS BEEN ON
3. VICODINE AND NEURONTIN FOR NERVE
4. DAMAGE PAIN EVER SINCE (AND OTHER MEDS).
5.
6. 18) AS A RESULT OF THE ACTIONS AND/
7. OR INACTION OF BONNER, HODGE, GULICK,
8. PAYNE, EASTWOOD, CAIN, MILLER, NOOTH,
9. AND SHELTON, PLAINTIFFS CONSTITUTIONAL
10. RIGHTS WERE VIOLATED. PLAINTIFF HAS BEEN
11. SUBJECTED TO RETALIATION, DEPRIVED OF
12. MEDICATION, INFLICTED PAIN, KNOWINGLY,
13. DELIBERATELY, MALICIOUSLY. ASSAULT AND
14. BATTERY OCCURED BY PAYNE. SRCI STAFF
15. SHOULD BE HELD LIABLE FOR THEIR ACTIONS
16. AND/OR INACTIONS. PLAINTIFF ATTEMPTED
17. TO RESOLVE THESE CLAIMS THROUGH THE
18. TORT CLAIMS ACT PROCEEDURES, WHICH
19. WERE DENIED. IT APPEARS SRCI -
20. ODOC OFFICIALS CHOOSE LITIGATION OVER
21. REASONING. THEY VIOLATED MY RIGHTS
22. UNDER ADMINISTRATIVE RULES, OREGON LAWS
23. AND THE STATE AND FEDERAL CONSTITUTION.
24. DAMAGES ARE APPROPRIATE FOR THESE CLAIMS.

1  19) While plaintiff was housed at

2  SRCI plaintiff had pending litigation

3  in the 9th Circuit Court of Appeals, The

4  pertinent case was pending "mediation"

5  settlement (Howard V. Lacy, Et. Al. No

6  07-35432).

7  Plaintiffs Complaint Alleged, in part,

8  Allegations of Back "and Neck" injuries

9  Sustained as a result of plaintiff

10  falling without Adequate footwear The

11  Complaint Alleged "Severe" injuries were

12  Sustained. Oregon Department of Corrections

13  defendants were Represented by Oregon

14  Department of Justice Assistant Attorney

15  Generals, who Requested, through Counsel,

16  Release of his medical Records Relating

17  to his Alleged Back and Neck injuries.

18  Oregon Department of Justice Civil Rights

19  litigation paralegal, Marilyn Dunaway,

20  Contacted plaintiffs Counsel by Email

21  And provided the Necessary Authorization

22  form for plaintiff to sign And give

23  to SRCI medical staff for the

24  Medical Records. This transaction

1   began on 6-18-08. Ms. P. Dean
2   brought the form to plaintiffs cell,
3   Personally. After some discussion and
4   delay, the signed consent form was
5   provided on 6-24-08. The form(s)
6   Noted "Back (and) Neck" records were
7   Requested from DOJ and Counsel/plaintiff.
8
9   20) Plaintiff had the "Back" & Ray done
10  "on 1-24-08" And the "Neck" & Ray done
11  "on 6-13-08", therefore the medical
12  Records Request was made "After" both
13  & Ray Reports/Examinations were done.
14
15  21) On 7-1-08 plaintiff seen defendant
16  Gulick Regarding the seriousness of
17  the injuries to plaintiffs Neck.
18  However upon Review of plaintiffs file,
19  Plaintiff was informed that "No
20  Notation Existed" indicating that
21  the Neck & Ray was done 6-13-08.
22  Staff present (for security purposes),
23  As well As plaintiff informed Gulick
24  that the & Ray was in fact done

Page 22 of 47

1   ON 6-13-08. Galick told plaintiff

2   he'd "Get back with plaintiff because

3   Something's not Right"; (He ORdered

4   the X RAY Report himself).

5

6   22) AS SOON AS plaintiff Returned

7   to his cell (7-1-08) he sent a kite

8   to Ms. Dean About the "NECK" X RAY

9   Report. plaintiff was told by Response

10  he was Rescheduled for "Back" X RAYS.

11  ON 7-9-08 plaintiff Again wrote Ms.

12  Dean And told her he needed the

13  "NECK" X RAY Report for pending

14  litigation, As A upcoming settlement

15  depended, in part, on the NECK X RAY

16  Results. plaintiff was told that

17  "There is NO 6-13-08 NECK X RAY

18  Report.

19

20  23) ON 7-16-08 Mediation Negotiations

21  Occured. Because the Mediator

22  was from California And flew by

23  plane to Portland, And because Counsel

24  for plaintiff drove from Seattle, Washington,

Page 23 of 47

1  plaintiff did not want to Reschedule
2  the hearing, but noted it to both
3  Counsel and the Mediator.

4
5  24) Because Plaintiffs "Back" & Ray
6  Report was only "moderate degeneration"
7  plaintiff only sought $7,000.00 of the
8  $20,000.00 Claim. This sum would
9  have "substantially been increased" with
10  more "severe" damages to the Back,
11  "or neck", if the Reports were Available.

12
13  25) plaintiff settled the Claim for $6,200.00
14  on 7-16-08.

15
16  26) on 7-18-08 plaintiff pursued
17  the grievance process, to be given
18  "compensation", to make the Claim "full".
19  The Grievance's Claims were denied
20  and All Available processes were
21  Completed. plaintiff also filed a
22  Tort Claim to be reimbursed, but
23  that Claim to was denied, therefore
24  litigation was appropriate to pursue.

1  27) ON 7-22-08 plaintiff SEEN
2  DR. Gulick. "He had the 6-13-08
3  "NECK" + RAY Report". He informed
4  plaintiff that plaintiff had "SEVERE"
5  DEGENERATIVE AND "Hyper tropic diseases"
6  involving plaintiffs C5-6, C 3-4, C-7
7  Disc's, which Appeared to RELATE to
8  the SEVERAL TRAMA's plaintiff Sustained
9  (1987, 1998, 2002, 2006), And that A "MRI"
10  WAS NECESSARY. THE MRI Reports
11  Support the "SEVERENESS" of the NECK
12  INJURY. SURGERY WAS thereafter
13  ORDERED AND Approved by Gulick
14  AND. Shelton. plaintiffs pain WAS REAL.
15
16  28) plaintiff wrote K. Robinson, As to
17  why the + RAY Report was "withheld"
18  from plaintiffs litigation, (on three
19  (3) OCCASIONS). NO RESPONSE WAS Recieved.
20  plaintiff wrote S. Hodge About the
21  + RAY Report being with held from
22  plaintiffs litigation. NO RESPONSE
23  WAS Recieved. Later plaintiff SEEN
24  Robinson AND WAS told " I CAN'T TALK

1  About it, but I did what I was
2  told".

3

4  29) Had plaintiff been in possession
5  of the "Neck" X Ray Report At the
6  Mediation hearing, and had the Report
7  been provided to plaintiff and Counsel
8  prior to discussion About the settle-
9  -ment Amount, the Evidence would be
10 Used to "substantially increase" the
11 Settlement Amount Requested. Since
12 the Complaint sought $20,000 and
13 At A minimum $10,000 would have
14 been sought, but more likely with-
15 out post medical treatment $15,000.

16

17 30) K. Robinson intentionally did not
18 document the 6-13-08 X Ray Report,
19 "As told", plaintiff Alleges it was S.
20 Hodge and/or Bonner who told her
21 to do it. Since A "Reckless Disregard,"
22 Intentionally, for plaintiffs Rights
23 occured, and A "Substantial" Due
24 process, (and Procedural) Violation Also

Page 26 of 47

1   Resulted, damages are approperiate.

2

3   31) Additionally k. Robinson Committed

4   Gross Negligence, Imputed Negligence,

5   Willful and Wanton Negligence, Causing

6   Plaintiff Infliction of Emotional distress,

7   Severely, Intentionally, which deprived

8   Plaintiff of Eucclence in A Civil matter.

9   Defendants Robinson(oc)Hodges(co)Bonner

10  Should pay the full costs of the

11  $20,000 oo Claim, minus settlement

12  of $6,200 oo, therefore $13,800, to be

13  Awarded from their Compensatory

14  and/or "Punitive" damages Requested

15  in the Relief of this complaint

16  (VIII). At A minimum Robinson is liable.

17

18  32) plaintiff gave defendants the

19  opportunity to settle this matter

20  for $800 oo, and they Refused.

21  That offer expired Jan. 1, 2009.

22  Defendants were told if litigation

23  was to occur the Amount would be

24  Substantially increased. They chose litigation.

Page 27 of 47

1  VI.    Claim II

2

3  (OREGON State Penitentiary; Salem)

4  Deliberate Indifference; Reckless

5  Disregard; Intentional Infliction of

6  Pain; Deprivation of Medication; Retaliation;

7  Malicious Intent to Cause Excruciating

8  Pain and Suffering; Mental, Emotional,

9  Pain and Suffering; Distress, Anxiety.

10

11  ON Defendants: (Vargo, Hansen, Shelton)

12

13       Facts:

14

15  33)  As a Result of (4) incidents

16  Since 1987 Plaintiff has suffered

17  Serious, Severe, Excruciating Pain

18  in Plaintiffs hands, Arms, shoulder,

19  Neck, And back. This is Clearly

20  Reflected in Plaintiffs medical files.

21  The (4) incidents causing the injury

22  occured in 1987, 1998, 2000, 2006,

23  However between those years, period-

24  -ically, other incidents caused concern.

Page 2B of 47

34) Between 1987 and the current
date of this complaint, plaintiffs medical
file reflects nerve pain, hand, arm,
shoulder, neck, and back pain. plaintiff
has been on several types of pain
medications on and off since 1987.
Naproxen, percogesic, Flexeril, Neurontin,
Vicodine, Motrin, Tylonel, Ibuprofen
Elavil. plaintiff is currently on
Vicodine, Neurontin, and Naproxen,
and has been on these for the
past couple years or thereabout.
plaintiff has had EMG's, nerve
tests, X rays, MRI's, and physical
examinations by numerous ODOC
and outside doctors. plaintiffs
medical condition is "SEVERE" as
documented by plaintiffs ODOC
medical files. plaintiff is
currently pending consultation
for surgery. ODOC-OSP Doctors
Vargo and Hansen are well aware
of plaintiffs serious medical needs.
At one time, upon being denied

1  MEDICATION (for pain) plaintiff filed
2  state court litigation, which resulted
3  in the medication being continued (2000),
4  However since then Vargo has refused
5  to see plaintiff what so ever, even
6  though for "years" he was assigned as
7  OSP's special housing Units health
8  care provider, who "Normally" see's
9  All SHU inmates..... Except plaintiff,
10 And in Retaliation for filing grievances
11 And litigation against him, his actions
12 have become "Vindictive, Deliberate,
13 Malicious, Reckless, Knowing, Intentional,
14 And "life threatening potentionally".
15              (VARGO)
16 35)  ON 11-19-2008 plaintiff was
17 transfered from SRCI to OSP for
18 Consultation of Surgery. plaintiff was
19 placed in Special Housing, which is under
20 defendant Vargo's care, as the SHU
21 health care provider. prior to being
22 Under Vargo's care, plaintiff was
23 Ordered medications for pain (Vicodine,
24 Naproxen) And was to be Ordered

1 NERVE PAIN MEDICATION (NEURONTIN)
2 had it NOT been for the TRANSFER. LOWER
3 TEIR RESTRICTIONS WERE ORDERED PRIOR to
4 TRANSFER. After Gulick REALIZED the
5 SERIOUSNESS OF plaintiffs iNjURIES
6 AND PAIN, he ROUTINELY REORDERED
7 plaintiffs MEDICAL "NEEDS", by file REVIEW.
8
9 36) UPON ARRIVAl At OSP I submitted
10 A kite to SEE VANGO, to RENEW the
11 VICODINE MEDICATION OR/AND ORDER
12 the NEURONTIN As discussed with
13 Gulick. I WAS told I WAS scheduled
14 to SEE VANGO. He didNt SEE me, SO I
15 AGAIN kited to SEE him,(VIA NURSE).
16 He AGAIN wouldnt SEE ME, SO AGAIN
17 I kited him, REMINDING him of the
18 previous litigation oN deNIAl of my
19 MEDICATION. He still REfused to SEE
20 ME, REfused to REOrder the VICODINE,
21 NAPROXEN, LOWER tERR, OR ORDER the
22 NEURONTIN. BECAuse I WAS without
23 ANY PAIN MEDICATION whatsoever I
24 WAS IN "SERIOUS EXCRUCIATING PAIN."

1  I filed GRIEVANCES AGAINST VARGO,
2  AND WAS told by the OSP health
3  SERVICES MANAGER that "VARgo WAS AWARE
4  of my PAIN ISSUES" but he "REFUSES
5  to RENEW my MEDICATIONS". I WAS told
6  to CONTINUE telling the NURSES of my
7  PAIN, which I did, WEEKLY. ON Appeal
8  of the grievances defendant Shelton
9  had DR. DEGNER, OSP, REORDER the
10 NAPROFEN AND ORDER the NEURONTIN
11 MEDICATIONS. BETWEEN 11-19-08
12 AND 12-15-08 I WAS IN "EXCRUCIATING
13 PAIN" which VARgo KNEW AND "intentionally
14 INFLICTED, knowingly, MALICIOUSLY." But he
15 didnt stop there. MORE Retaliation OCCURED.
16
17 37) ON 12-30-08 I submitted A
18 kite to the NURSE to have my
19 Bottom teir RESTRICTIONS ORDER RENEWED,
20 As I was told by staff if I didnt
21 I could be moved upstairs. I was
22 told VARgo would REVIEW the CHART.
23 FOR AN ENTIRE month VARgo's failure
24 to RENEW my lower teir RestRICTIONS

1  was "Vindictive", and on  1-29-09
2  he Refused to Renew the Order (by
3  SRCI medical staff on 8-20-08), even
4  though my file reflects pain shoots
5  down my leg (left) when I walk up
6  stairs. He told the Nurse to tell me
7  "this is Not A medical issue". He "Refused
8  to see or examine me". Plaintiff filed
9  A grievance noting the conflict
10 between us, and my "fears" being
11 under his care. "He" Responded —
12 stating he would schedule an appoint-
13 ment to discuss the concern, but he
14 "still never would see me". Finally
15 on Grievance appeal defendant.
16 Shelton had Plaintiff scheduled to
17 be seen, and when done so (back
18 At SRCI by then), Lower teir
19 Restrictions were Ordered. While
20 At OSP (in March) Plaintiff was
21 forced to walk up steps, daily, for
22 About A month) because Vango Refused
23 to Reorder the Lower teir Restrictions.
24 While in OSP's special Housing I was

Page 33 of 47

1  Ordered to move to A Cell on the
2  top teir. When inmates come out for
3  Showers, Recreation, Excercise, they
4  walk to - from these Areas. Plaintiff
5  was in excruciating pain walking up
6  the steps, even though by then I
7  was on nerve pain medication (Neurantin)
8  And Anti-Inflammatory medication
9  (Naproxen). Vargo was Again "Knowingly,
10  intentionally, Vindictively, maliciously
11  inflicting pain on me."
12
13  38) Plaintiffs "History" with Vargo,
14  As his health Care provider, made
15  Plaintiff "fear for his life", to the
16  point to where on March 13, 2009
17  Plaintiff Refused Surgery, unless he
18  was "Assured" Vargo would not be
19  his post-Surgery health Care provider.
20  However Defendant Shelton, Vargo's
21  Supervisor, Responded to the grievance
22  Stating OSP is the facility where
23  Plaintiff would Receive post-operative
24  Care, And Vargo is the post-operative

1  Health care provider for the infirmary
2  where plaintiff would be. Shelton was
3  unable to assure plaintiff that Vargo
4  would not be a health care provider to
5  plaintiff after surgery, so plaintiff
6  refused the surgery, at OSP, and was
7  transferred back to SRCI.

8
9  39) Prior to leaving OSP plaintiff
10 learned of possible criminal wrong-
11 doing's by Vargo, and contacted the
12 State police. Plaintiff "fears for
13 his life" in Vargo's care, and has
14 "Expressed" this to OSP medical
15 staff verbally "and in writing,"
16 as well as to defendant Shelton.

17
18 40) Dr. Vargo knowingly, deliberately,
19 Intentionally, maliciously, and recklessly
20 disregards plaintiffs rights, Vindictively,
21 in retaliation for filing administrative
22 and Judicial complaints against him,
23 as a result he subjected plaintiff
24 to intentional infliction of pain, by

1    denying plaintiff his medication,
2    And denying lower teir Restrictions,
3    with intent to cause me pain. He has
4    Continously Violated my rights to be free
5    from cruel and Unusual punishment, and
6    "is a threat" to plaintiffs physical well-
7    being.

8          (HANSEN)

9    41) OSP Dr. Hansen, who works
10    "Closely" with Dr. Vargo (And Vargo
11    is his Supervisor As OSP's Chief
12    medical officer) Intentionally denied
13    plaintiff's surgery and medication(3)
14    Causing intentional infliction of pain
15    in Violation of plaintiffs rights.
16
17    42) On 6-17-09 plaintiff was
18    Returned to OSP for surgery (after
19    Dr. Vargo was Replaced As the special
20    Housing Unit Health Care provider).
21
22    / / / ( ( ( ( ( / / /
23    (3) Hansen Replaced Vargo As the special
24    Housing health Care provider At OSP

Page 36 of 47

1  Between 6-17-09 and 2-3-10
2  plaintiff was housed at OSP in
3  Special Housing, Inmate Management
4  Unit (Imu). During this period plaintiff
5  was seen by the outside surgeon,
6  had a New MRI done, and a Emg.
7  plaintiffs medication for pain (vicodine)
8  was Repeatedly Renewed by Hansen,
9  However on 2-2-10 Hansen informed
10  plaintiff that "in his opinion" surgery
11  wasn't needed, so he was denying
12  the Surgery, and would not renew
13  the medication. He further said
14  this was conveyed to the surgeon,
15  Dr. Buza, Salem. plaintiff asked
16  "why no pain medication, knowing
17  my Serious Severe injury". plaintiff
18  was told "live with the pain, you'll
19  get over it, or use to it". Hansen
20  had no Authority to deny the surgery,
21  As the OSP-TLC (Therapeutic
22  Level of Care) Committee approved
23  the Surgery At SRCI. plaintiff
24  was transfered back to SRCI 2-3-10,

Page 37 of 47

1  the day After HANSEN denied
2  the Surgery. EVEN while Not At OSP,
3  HANSEN attempted to CAUSE plaintiff
4  pain, (And did so, though briefly)
5
6  43) upon Return to SRCI (2-3-10)
7  plaintiff Seen the NURSE to Renew
8  the Vicodine which was Expiring
9  2-5-10, The NURSE said she'd
10  Ask Dr. Gulick to Renew the
11  Medication. She later returned the
12  SAME day (2-4-10) And told plaintiff
13  that DR. HANSEN At OSP had been
14  Contacted And He told Gulick "not
15  to Renew the Medication". He Also
16  told Gulick " DR. BUZA said the
17  Surgery was Not NECESSARY". This
18  didn't Reflect DR. BUZA's REPORT,
19  So Gulick scheduled plaintiff to
20  See him, And on February 2-9-10
21  He told plaintiff that HANSEN had
22  No Authority to CANCEll the Surgery,
23  And he himself would Contact DR.
24  BUZA to See About the Surgery.

Page 38 of 47

1  HE "REORDERED the VICODINE" AS well,
2  AND ORDERED A + RAY of plaintiffs
3  BACK, which hAS gotten WORSE. THE
4  + RAY WAS tAlcen 2-18-10 And
5  plaintiff told defendant RObinson,
6  to "MAlce SURE" this REPORT is done
7  "Correctly" And " properly documented".
8
9  44| ON 2-9-10 SRCI'S TLC Committee
10  met AND DR. Shelton wAS to REview
11  plaintiffs file, AND DR. HANSEN'S ERROR.
12  ON 3-10-10 DR Shelton Approved
13  the Surgery, OVERRIDING HANSENS
14  denIAl. plaintiff WAS scheduled to
15  SEE Gulick (3-30-10) which plaintiff
16  did. plaintiff lEARNEd of the Approval
17  for Surgery AgAIN, And the BAclc + RAY
18  REport showed "SEVERE" DAmAgE, possibly
19  Also NEEDing Surgery As well. plaintiffs
20  NEURONTIN And VICODINE medications
21  WERE Also RENEWED. plaintiff CONVEYED
22  the OSP VARgo, HANSEN Conflicts, And
23  REquested postponement of Surgery
24  UNtil it could bE done IN ONTARIO.

Page 39 of 47

1  This went to SRCI'S - TLC and
2  was Approved on 4-7-10, However
3  on 4-13-10 plaintiff was "temporarily
4  transfered" to OSP for A "Court" trip.
5  On 5-11-10 Blood was drawn And A UA
6  Requested. On 5-12-10 plaintiff was told
7  Surgery was scheduled. On 5-13-10 A "EKG"
8  was done. plaintiff Informed medical
9  Staff that Surgery was postponed, but
10  they said "WE'RE following Dr. Hansen's
11  Orders". plaintiff finally had to Refuse
12  Services, until he could see the defendant
13  to find out "why" was Surgery being Attempted
14  "All of A Sudden". Security staff Also
15  got Involved, As this was not A medical transfer.
16
17  45) Finally on 5-18-10 plaintiff
18  seen Hansen, Explained surgery
19  was postponed And A "New Back" X-Ray
20  Existed. Hansen Called Dr. Buza,
21  And plaintiff was transported to
22  See Buza. After Explaining the
23  Matter, (including OSP Vargo, Hansen
24  Conflicts) surgery was cancelled, As

Page 40 of 47

1. BUZA didn't EVEN hAVE the "NEW BACK"
2. RepoRt, plAintiff WAS RetuRNEd to
3. SRCI the NExt dAy, 5-19-10.
4.
5. 46) oN 5-25-10 plAiNtiff SEEN Gulrck
6. ANd ExplAiNed whAt HANSEN Attempted
7. to do. Gulrck ReoRdeRed CoNsultAtioN
8. IN ONtARio, ReoRdeRed plAintiffs
9. Vicodine, LoweR teiR, bottom BuNk
10. Restrictions, ANd took the CASE bAck
11. to SRCI's TLC Committee.
12.
13. 47) DR. HANSENS ACtioNs ANd/oR INACtioNs
14. CoNstitute DeliberAte INdifferENce to
15. plAintiffs SERious MEdicAl NEEds, by
16. INtENtioNAlly depRiving me of medicAtioN
17. foR pAiN, ANd deNying suRgeRy without
18. AuthoRity. HE Recklessly disRegARded
19. my medicAl CoNditioN, kNowingly, CAUSING
20. ME pAiN, MENtAl ANd EmotioNAl distRESS,
21. ANxiety, ANd plAiNtiff is "iN feAR" of
22. beiNg iN his CARE, As plAiNtiffs
23. heAlth CARE pRovideR. DAMAges should
24. be AwARded to plAiNtiff AccoRdingly.

Page 41 of 47

## VII. Cause of Action

48) O.DOC officials at SRCI ignored plaintiffs serious medical condition and as a result caused plaintiff to be subjected to excruciating pain, inflicted intentionally, deliberately, knowingly, and recklessly by staff. They subjected plaintiff to cruel and unusual punishment, knowingly, in violation of plaintiffs constitutional, statutory, (and administrative rules) rights. Adequate review of plaintiffs medical files, in their entirety, would have prevented the infliction of pain upon plaintiff. After visually seeing the pain plaintiff was in, the infliction continued, each incident, therefore it should be "inferred" to be intentional, deliberate, knowingly, recklessly, with intent to cause me pain, maliciously, (particularly defendant Payne), and punitive damages should be mandated in SRCI officials' action's

1  AND/OR INACTION, UNDER COLOR OF
2  STATE LAW, FOR VIOLATING PLAINTIFFS
3  RIGHTS, UNDER THE FIRST, EIGHTH, AND
4  FOURTEENTH AMENDMENT OF THE UNITED
5  STATES CONSTITUTION, ARTICLE I, SECTION
6  16 OF THE OREGON (STATE) CONSTITUTION,
7  AND OREGON ADMINISTRATIVE RULES AND
8  STATUTORY LAWS OF THE STATE OF OREGON.
9
10  49) ODOC OFFICIALS AT OSP KNOWINGLY
11  REFUSED PLAINTIFFS PAIN MEDICATION,
12  INTENTIONALLY, DELIBERATELY, MALICIOUSLY,
13  TO CAUSE PLAINTIFF PAIN, CONTINUOUSLY.
14  DEFENDANT VARGO KNEW ABOUT PLAINTIFFS
15  MEDICAL CONDITION PREVIOUSLY AS HE ALSO
16  TESTIFIED IN A HABEAS CORPUS TRIAL,
17  AND ITS NOTED ABOUT HIS REFUSAL TO
18  PROVIDE MEDICATION TO PLAINTIFF. HIS
19  ACTION OR INACTION WAS MALICIOUSLY.
20  DEFENDANT HANSENS DEPRIVATION OF
21  MEDICATION WAS INTENTIONAL, KNOWINGLY
22  AND A RECKLESS DISREGARD FOR PLAINTIFFS
23  MEDICAL NEEDS. PUNITIVE DAMAGES SHOULD BE
24  MANDATED AGAINST THESE OFFICIALS, INDIVIDUALLY.

1    VIII.    Requested Relief

2

3    50) Wherefore plaintiff moves the
4    Court to grant the following Relief:

5

6    51) Issue an Injunction declaring that
7    each defendant Individually and/or
8    Collectively violated plaintiffs Constitutional,
9    Statutory, and Administrative Rights,
10    that are Clearly Established under
11    the First, Eighth, and Fourteenth
12    Amendments of the United States Constitution,
13    Oregon Laws, and Oregon Department
14    of Corrections - Oregon Administrative
15    Rules, policies, and procedures;

16

17    52) Issue an Injunction against
18    each defendant Individually and/or
19    Collectively, declaring that they violated
20    plaintiffs Constitutional, Statutory,
21    and Administrative Laws Rights, Acting
22    under Color of State Law, in their
23    Official Capacity, and as a result
24    Damages are to be Awarded;

53) Issue an Injunction Against Each defendant, Individually and/or Collectively, And officially, declaring that Nominal, Compensatory, And Punitive Damages Are Awarded As follows:

1) Nominal Damages of $1.00 Against Each defendant jointly and Severally found liable for Violating plaintiffs Rights;

2) Compensatory Damages of $10,000.00 Against Each Defendant jointly and Severally found liable for Violating plaintiffs Rights;

3) Punitive Damages of $5,000.00 Against defendants: Shelton, Robinson, Nooth, Miller, Cain, $10,000 Against Hodge, Bonner, Gulick, Eastwood, Campbell; $20,000 Against Payne;

4) Punitive Damages of $40,000.00 Against defendants: Vargo, Hansen;

Page 45 of 47

54) Issue an Injunction, permanently, against each defendant, Individually and/or collectively, restraining them from retaliating against plaintiff for filing this Complaint, and order that any such Retaliation shall be construed as punishment, and Contempt of Court, punishable by a $1,000.00 fine against each defendant personally found to have retaliated against plaintiff, after a hearing, before the Court, due to plaintiffs Serious Medical Condition, which could disable plaintiff, permanently;

55) Issue an Injunction Retaining Jurisdiction over this Case, to hold a hearing in the event of Retaliation, for Contempt of Court proceedings;

56) Issue any Injunction that the Court deems proper and just in this matter, using the Courts Jurisdiction and Discretion;

Page 46 of 47

1  Dated this 18ᵗ day of JUNE 2010

2

3

4          Clayton L. Howard

5          CLAYTON LAMONT HOWARD

6          SID #5838277

7          777 STANTON Blvd

8          ONTARIO, OREGON 97914

9          PlAiNTiff PRO-SE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 47 of 47

1   VERIFICATION

2

3   I, CLAYTON LAMONT HOWARD, UNDER

4   OATH, SWORN to BEFORE A NOTARY

5   SWEAR THAT THE STATEMENTS MADE

6   IN THE ATTACHED CIVIL Rights Complaint

7   ARE TRUE AND CORRECT to THE BEST of

8   MY KNOWLEDGE AND BELIEF.

9

10

11   DATED THE 18th DAY OF JUNE 2010

12

13

14   Clayton L. Howard

15   CLAYTON L. HOWARD #5838277

16

17

18   SWORN to BEFORE ME ON THIS 18th

19   DAY OF June      2010

20

21   Maureen Rossi Hill

22   (SEAL)   Notary Public

23   STATE of OREGON

24

Page  1  of  1



OFFICIAL SEAL
MAUREEN ROSSI-HILL
NOTARY PUBLIC-OREGON
COMMISSION NO. 437890
MY COMMISSION EXPIRES MAY 26, 2012

1    CERTIFICATE of MAILING

2

3    The Attached 42 USC § 1983 Verified

4    Civil Rights Complaint, with Application

5    to proceed INforma Pauperis, And Civil

6    Cover Sheet, was mail to the Clerk of

7    the Court As indicated below on the

8    18th day of June 2010,

9

10    Clerk of the Court

11    U.S. D.C. of Oregon

12    620 S.W. Main St.

13    Portland, OR. 97205

14

15

16    Clayton Lamont Howard

17    Clayton Lamont Howard #5838277

18    777 Stanton Blvd.

19    Ontario, OR 97914

20    Plaintiff pro-se

21

22

23

24

Page 1 of 1